## Kline Township School District et al. *v.* McAloose et al., Appellants.

Argued November 27, 1934. Before FRAZER, C. J., SIMPSON, KEPHART, SCHAFFER, MAXEY, DREW and LINN, JJ.

*Conrad A. Falvello,* with him *John Skweir,* for appellants.

*Chas. E. Berger,* with him *Frank A. Bruno* and *R. A. Freiler,* for appellees.

OPINION BY MR. CHIEF JUSTICE FRAZER, January 7, 1935:

This is an appeal from a decree of the Court of Common Pleas of Schuylkill County awarding a preliminary injunction restraining defendants from interfering with the use and occupation of the school buildings in Kline Township by the regularly constituted staff of teachers, enjoining all acts of violence and coercion intended to hinder or embarrass the teachers in their efforts to conduct the regular school sessions, and commanding defendants to surrender possession of the school property. The record indicates that, upon the part of defendants and other residents of this township, there has been a shocking disregard of law and order, and that a situation has arisen which is a disgrace to any self-respecting community.

The acts which made necessary the filing of the bill in this case are the outgrowth of a controversy concerning the election of two directors for the School District of

Kline Township at the general election held November 7, 1933. On that occasion Salvatore Natora and Stephen Sekerak, Jr., were candidates for the office of school director against Carl McAloose and Edward Mears. Upon the face of the returns, McAloose and Mears appeared to have been elected and received certificates of election from the clerk of courts. The ballot box from the Honeybrook District was brought into court pursuant to the provisions of the Act of April 23, 1927, P. L. 360, and a recount of the ballots made. The recomputation of the vote indicated that Natora and Sekerak had obtained a majority of the votes, and certificates of election were thereupon issued to them by the judge of election and the two inspectors of election from each of the two election districts.

The directors of the school board whose terms had not expired at the time of the 1933 election were Sandy F. Gallo, John McFadden, and Joseph J. Bruno. On December 4, 1933, they held a reorganization meeting, and upon the advice of the solicitor for the school district accepted Natora and Sekerak as members of the board, and proceeded with the election of officers. On December 6, 1933, a petition was filed in the Court of Quarter Sessions of Schuylkill County to contest the election of Natora and Sekerak, but was proceeded with in such manner that the master appointed to take testimony had not made his report at the time of the filing of the bill in equity in this case. Joseph J. Bruno resigned as a member of the school board on January 24, 1934, and the remaining members of the board appointed Alfred Bruno to succeed him. On February 1, 1934, Alfred Bruno was elected president of the school board.

A meeting of the board was held on July 6, 1934, at which time preparations for the opening of the schools for the year 1934-5 were made. September 10th was selected as the date for the opening of the school term, and a principal and 18 teachers were elected, some for a three-year term, others for one year. On August 11, 1934, all

of the teachers executed contracts in writing, in accordance with the requirements of the School Code, for their respective periods of appointment. The School District of Kline Township owns three buildings for the accommodation of school children, these buildings being located at Kelayres, Haddock and Lofty, respectively.

On August 30, 1934, the principal and a full staff of teachers went to the school building in Kelayres for the purposes of enrolling the children who were eligible to enter the public schools for the approaching term, and did enroll those who appeared. On the following day the principal and the teachers returned to the building for the purpose of making a further enrollment of the children. The events which then occurred are related in the opinion of the court below as follows: "Carl McAloose, Edward Mears and others, named and unnamed, numbering between two hundred and three hundred persons, armed with blackjacks, pick handles, baseball bats, clubs and other missiles, surrounded the building, and by threats of bodily harm to and by assaults upon the principal of the schools, intercepted him and by force endeavored to prevent him from entering the school building. He, however, entered and the defendants and their associates, in the number aforesaid, by threats of personal harm and injury, angry and violent and abusive conduct and gestures, and by assaults, made entry into the said school building and demanded that the school principal should surrender to them the keys to the school building so as to enable them to take possession of the same. On the same day, in like fashion and in like number, the defendants and others, armed as aforesaid, and with like assaults and threats, intercepted and prevented thirteen of the school teachers, appointed by the board of directors and under contracts to teach, from entering the school building for the purpose of enrolling the children. Four days later, September 4, 1934, the defendants and their associates, without the consent of the school board, entered the Kelayres school building, installed five teach-

ers, including a principal, not elected by the school board, to instruct the children, and opened the school for their attendance." Similiar scenes of violence and coercion occurred at the Lofty and Haddock schools, which also were seized by defendants and their associates. This state of affairs continued until the presentation of the bill in this case.

The wrongful and illegal acts set forth above are not denied by defendants and no justification in law is set up in their defense. Under such circumstances the award of the injunction was not only proper but imperative. Appellants' contention that this proceeding is an attempt to have the court determine collaterally the right and title to the offices of school director, is entirely without foundation. The injunction proceedings did not and could not settle the question of the right of Natora and Sekerak to hold office. That matter will be determined by the election contest in due time. What the injunction does decide, however, is that defendants, regardless of the strength of their claim to the disputed offices, cannot take the law into their own hands and by force and intimidation obtain control of the school buildings or exclude the regularly appointed teachers. Had defendants wished to test the right of Natora and Sekerak to be seated on the school board, they could have done so promptly by means of a writ of quo warranto. Their rights were also protected by the election contest proceedings. There was no need to resort to extra-legal methods of self-help.

We do not mean to be understood as passing upon the merits of this unfortunate controversy. No one supposes that either one of the two opposing factions in this community is completely free of blame for creating the present situation. But whatever may be the background of the ill will existing between these groups, it does not justify in the slightest the acts of mob violence which are indicated by this record. Such conduct will not be tolerated so long as the regularly constituted courts are in existence.

Whether or not Natora and Sekerak have full legal title to their offices, they are at least de facto officers. The present school board is the only valid successor to the old board and its authority to control and operate the schools continues until the contrary has been judicially determined. The schools in this township must be reopened at once and the instruction of the children should be carried on without let or hindrance from any one. The action of the court below in awarding the injunction in the present case is supported by numerous authorities, among which may be mentioned Fredericks v. Huber, 180 Pa. 572; Washington Boro. v. Steiner, 19 Pa. Superior Ct. 498; Leisenring v. Pa. Lighting Co., 59 Pa. Superior Ct. 202; and Salant v. Sauserman, 70 Pa. Superior Ct. 506.

The decree of the court below is affirmed at appellant's costs.